IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| J.C. CANNISTRARO, LLC,<br><br>      Plaintiff,<br><br>and<br><br>BC ONE CONGRESS TOWER JV LLC,<br><br>      Nominal Plaintiff,<br><br>v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, ALLIANZ GLOBAL RISKS U.S. INSURANCE COMPANY, and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>      Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff J.C. Cannistraro, LLC ("Plaintiff") brings this action under a certain builder's risk insurance policy issued by Defendant insurance carriers Zurich American Insurance Company ("Zurich"), Allianz Global Risks U.S. Insurance Company ("Allianz"), and Travelers Property Casualty Company of America ("Travelers" and collectively with Zurich and Allianz, "Insurers"). As set forth more fully below, Plaintiff is entitled to a declaration of its rights regarding coverage under that policy for certain expenses it incurred following two fires at the construction project on which Plaintiff was performing as a subcontractor. In addition, Plaintiff is entitled to damages as a result of Insurers' breach of contract and breach of the implied covenant of good faith and fair dealing, as well as multiple damages and attorney's fees under M.G.L. c. 93A and M.G.L. c. 176D.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C.

§ 1332(a)(2), in that the action is between a citizen of Massachusetts and citizens of foreign states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. This Court has jurisdiction over the person of Zurich in that at all times relevant, it has engaged in business activities within the Commonwealth of Massachusetts and has otherwise purposefully availed itself of this jurisdiction.

3. This Court has jurisdiction over the person of Allianz in that at all times relevant, it has engaged in business activities within the Commonwealth of Massachusetts and has otherwise purposefully availed itself of this jurisdiction.

4. This Court has jurisdiction over the person of Travelers in that at all times relevant, it has engaged in business activities within the Commonwealth of Massachusetts and has otherwise purposefully availed itself of this jurisdiction.

5. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the transactions, acts, and/or omissions giving rise to the causes of action asserted herein occurred within the Commonwealth of Massachusetts.

6. An actual justiciable controversy between Plaintiff and Insurers exists within the meaning of 28 U.S.C. § 2201 regarding whether Insurers have a duty to reimburse Plaintiff with respect to the insured losses described below.

**THE PARTIES**

7. Plaintiff is a limited liability company organized under the laws of the Commonwealth of Massachusetts with a principal place of business at 201 Jones Road, Waltham,

Massachusetts.

8. Nominal Plaintiff BC One Congress Tower JV LLC (the "Owner") is a limited liability company organized under the laws of the State of Delaware registered with the Massachusetts Secretary of State and with a principal place of business located at 1615 L Street NW, Suite 650, Washington, DC. The Owner is named as a Nominal Plaintiff as any judgment, decree, or order in this Action may affect its interests relative to the insurance policy at issue in this Action.

9. Upon information and belief, Zurich is an insurance company licensed to do business in Massachusetts with a principal place of business located at 1299 Zurich Way, Schaumburg, Illinois.

10. Upon information and belief, Allianz is an insurance company licensed to do business in Massachusetts with a principal place of business located at 225 W. Washington Street, Chicago, Illinois.

11. Upon information and belief, Travelers is an insurance company licensed to do business in Massachusetts with a principal place of business located at One Tower Square, Hartford, Connecticut.

## FACTS APPLICABLE TO ALL COUNTS

### *Background*

12. On or about November 21, 2019, Owner entered into a contract with John Moriarty & Associates, Inc. ("JMA") under which JMA was to serve as the general contractor for the construction project known as One Congress Street Tower in Boston, Massachusetts (the "Project").

13. On or about January 2, 2020, JMA entered into a subcontract with Plaintiff for the

performance of certain fire protection work at the Project.

14. Subsequently, JMA and Plaintiff entered into three additional subcontracts for the performance of additional fire protection work, as well as certain HVAC work, at the Project (the four subcontracts collectively, the "Subcontracts").

15. Zurich issued a builder's risk insurance policy covering the Project, known as Zurich Completed Value Builders Risk Policy No. IM 3065875-00 with an effective term running from April 23, 2019, to January 1, 2023 (the "Policy").

16. Allianz and Travelers also subscribe to the Policy.

17. In exchange for issuing the Policy, Owner paid premiums of over $1.3 million to the Insurers.

### *The Policy*

18. The Policy generally requires Insurers to pay for loss or damage caused by certain enumerated causes of loss.

19. For example, the Policy requires Insurers to pay for "direct physical loss of or damage to builders risk property."

20. The entirety of the Project qualifies as builders risk property, including work in progress, materials, and other items at the Project site.

21. In addition to the direct causes of loss, the Policy requires Insurers to pay for certain other categories of loss.

22. For example, the Policy provides several coverage extensions. Among other things, these coverage extensions provide coverage for certain "contractor expenses," including:

- "Contractor's extra expense" (which includes overtime and related expenses);
- "Expediting expense" (which includes costs associated with expediting the permanent repair of damaged property); and

- "General Conditions expense" (which includes additional storage, equipment rental, and other expenses).

23. In addition, the Policy includes a "Delay in Completion Coverage" endorsement, which allows the Owner to recover for lost rental income and similar losses if the Project is delayed due to a covered event.

24. Significantly, the Policy also covers the "reasonable and necessary expenses" incurred to avoid or reduce such delay-related losses.

25. Thus, to the extent Owner, JMA, Plaintiff, or others incurred expenses to accelerate completion of the Project work or otherwise overcome delays caused by covered events, those expenses are covered under the Policy.

26. The Policy lists the Owner as a "Named Insured."

27. The Policy states that a subcontractor such as Plaintiff is covered as an "Additional Insured."

28. The language of the Policy and the contemporaneous actions of Insurers make clear that Plaintiff is entitled to coverage and to all the rights under the Policy as if Plaintiff was explicitly listed as a "Named Insured."

29. In addition, Plaintiff is an express third-party beneficiary of the Policy.

### *The Fires*

30. The Project experienced two separate fires during construction.

31. The first fire occurred on June 24, 2022, on the 20th floor of the Project.

32. The second fire occurred on July 30, 2022, within the duct shaft of the building (the two fires collectively, the "Fires").

33. The Fires caused significant damage to the work in place, including the work of Plaintiff.

5

34. In addition to requiring extensive repair, the Fires also substantially impacted the Project schedule.

35. Despite the Fires' obvious impact on the Project schedule, the scheduled completion date of the Project remained unchanged.

36. Consequently, and despite the impact to Plaintiff's work under the Subcontracts, Plaintiff's timeline for completion of its work also remained unmoved.

37. As a direct and proximate result of the Fires, Plaintiff incurred additional labor costs to its base Subcontract Work and other damages for which Plaintiff was not at fault or responsible.

38. In addition to the direct costs associated with repairing damage caused by the Fires, Plaintiff expended significant additional resources (including additional labor and significant other extra expenses) to meet the Project's completion milestones, which remained unchanged despite the Fires.

39. As a result of these efforts, Plaintiff and others ultimately overcame the Fires' impacts, and the Project was still completed on time, but at great cost to Plaintiff.

40. The additional expenses incurred by Plaintiff to overcome the Fire-caused impacts were reasonable and necessary to avoid the impacts to the Project schedule that otherwise would have occurred.

41. These additional expenses incurred by Plaintiff are covered losses under the Policy.

42. Following the Fires, Plaintiff and others submitted claims which were adjusted and paid by the Insurers, without being formally submitted by Owner as "Named Insured."

43. These claims sought reimbursement for losses relating directly to damage caused by the Fires.

44. Insurers settled many of these claims and made payments to Plaintiff and other

claimants.

45. Although Insurers paid certain direct costs associated with the repair and replacement of damaged property, Insurers have not fully reimbursed Plaintiff for all covered costs incurred because of the Fires.

46. More specifically, Insurers have not reimbursed Plaintiff for the losses incurred to accelerate completion of the work and avoid more significant impacts and losses that would have otherwise resulted from the Fires.

47. Owner permitted and directed Plaintiff to pursue insurance coverage directly under the Policy for all costs, damages, and losses that Plaintiff incurred in connection with the Fires, including costs that Insurers did not yet pay.

48. Consistent with such direction, on November 6, 2023, Plaintiff submitted a claim under the Policy seeking coverage for certain unreimbursed losses (the "Claim"). Among other things, the Claim seeks reimbursement for the losses incurred because of Plaintiff's acceleration of work and other efforts to overcome the Fire-caused impacts and complete the Project on time.

49. Insurers failed to respond in any way to Plaintiff's Claim for six months.

50. Finally, by letter dated May 6, 2024, Insurers (through counsel) provided a written response to the Claim (the "Response").

51. The Response reserved all rights and declined to accept coverage of the Claim under the Policy.

52. The Response specifically acknowledged that Defendants received and were presented with Plaintiff's Claim.

53. Without expressly denying coverage, the Response identified several "potentially applicable Policy provisions that may bar or limit" the Claim.

54. For example, the Response states that only the Project Owner is a "Named Insured" under the Policy. According to the Response, Plaintiff is only an "Additional Insured" (not a Named Insured), and that Plaintiff therefore lacks standing to assert claims directly under the Policy.

55. The Response is legally and factually incorrect in this regard, and Plaintiff was entitled to submit the Claim to Insurers directly on its own behalf.

56. In addition, Owner, through its insurance broker, notified Insurers, in writing, that Owner consented to the submission of the Claim under its own name and instructed Insurers and their counsel to manage the Claim directly with the Plaintiff and its counsel going forward.

57. Notwithstanding the fact that Insurers have expressly acknowledged that the Claim was "presented on November 6, 2023," provided an 8-page response to such claim, retained a building construction consultant to assist with the review of the materials submitted with the Claim, and acknowledged receipt of Owner's consent to submit the Claim and direction to adjust such Claim directly with Plaintiff, by letter dated July 17, 2024, Insurers wrote to Owner's broker claiming that Insurers are declining to adjust the Claim.

58. Notably, the Insurers were previously presented with, *and paid*, another claim from this Plaintiff arising out of the same Fires under the same Policy; so their refusal to now manage this Claim directly with Plaintiff as expressly instructed by Owner is not only in direct violation of the Policy terms, but also inconsistent with Insurers' own prior course of conduct, thereby underscoring that Insurers' position regarding standing is without merit and asserted in bad faith.

59. Insurers' past conduct constitutes a waiver of any standing requirements and their attempt to interpose such requirements as a reason for denying coverage or refusing to adjust the Claim is wholly in bad faith.

60. In addition, Insurers' May 6, 2024 Response also indicates that the losses included in the Claim may not be covered under the Policy.

61. More specifically, the Response states that "only 'direct physical loss of or damage to' insured property may be covered by the Policy."

62. The Response's position in this regard is unsupported by the Policy or by applicable law.

63. There is no dispute that the Fires constituted covered events under the terms of the Policy.

64. Furthermore, the Project was completed on time as a direct result of the efforts of Plaintiffs (and others) and the expenses incurred by them to accelerate the work.

65. As such, and because the Claim seeks reimbursement for the "reasonable and necessary expenses" incurred by Plaintiff to accelerate the Project (and prevent such losses), such expenses are plainly covered under the Policy.

66. In addition, all other costs and losses sought by Plaintiff in the Claim are covered by the Policy.

67. Insurers' position, as set forth in the Response, makes clear that Insurers failed to conduct any reasonable investigation of the Claim.

68. Instead, Insurers' position is primarily based on "standing" arguments such as whether Plaintiff is a Named Insured and whether the types of purported damages are covered by the Policy.

69. Insurers' stated reasons for declining coverage—although misplaced, as discussed above—are utterly divorced from any investigation of the underlying "value" of the Claim.

70. Insurers' stated reasons for declining coverage should have been readily apparent

9

based on a cursory review of the Claim itself and did not require six months to investigate, determine, or communicate to Plaintiff.

71. As such, it is unreasonable for Insurers to have waited six months to notify Plaintiff of these reasons for disclaiming coverage.

72. Furthermore, the Response completely failed to address two of the most important aspects of the Policy regarding coverage of the Claim; namely, the Policy's coverage extensions and the Policy's Delay in Completion Coverage Endorsement.

73. After Plaintiff's receipt of the Response, and without acknowledging any merit to Insurers' positions stated in the Response, Owner indicated that it consented to submission of the Claim to Insurers under Owner's name, with a direction for the Insurers to adjust the Claim directly with Plaintiff pursuant to Policy's General Conditions.

74. Nonetheless, to date, Insurers have refused to honor Owner's directives and have not paid any of the costs or losses included in the Plaintiff's Claim.

75. Insurers' liability to pay the Claim is reasonably clear.

76. Plaintiff has performed all conditions precedent to the assertion of these claims not otherwise waived or excused.

## **LEGAL CLAIMS**

### **COUNT I**
### **(Declaratory Judgment)**

77. Plaintiff restates and incorporates by reference all allegations made in the previous paragraphs of this Complaint as though fully set forth herein.

78. There is a genuine and bona fide dispute and an actual controversy and disagreement between Plaintiff and Insurers regarding whether Insurers have a duty to reimburse Plaintiff for the amounts sought by the Claim.

79. Plaintiff has fully complied with all of the terms and conditions of the Policy relating to the Claim.

80. Insurers have improperly denied coverage for the Claim, which is covered under the Policy, and have improperly refused to reimburse Plaintiff for the amounts sought by the Claim.

81. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff requests that the Court issue a judicial declaration that the Claim is covered under the Policy, and that Insurers were and are obligated to reimburse Plaintiff for the amounts sought by the Claim.

## COUNT II
### (Breach of Contract)

82. Plaintiff restates and incorporates by reference all allegations made in the previous paragraphs of this Complaint as though fully set forth herein.

83. The Policy is a contract which is governed by Massachusetts law.

84. Plaintiff is entitled to the full benefits of the Policy.

85. All amounts sought by the Claim are covered by the Policy.

86. Plaintiff has fully complied with all of the terms and conditions of the Policy relating to the Claim.

87. Insurers have refused and continue to refuse to reimburse Plaintiff for the losses sought by the Claim.

88. Insurers' refusal to reimburse Plaintiff in this regard constitutes a material breach of the Policy.

89. Insurers' breach has proximately caused Plaintiff harm for which Plaintiff is entitled to damages exceeding $75,000 in an amount to be determined at trial.

## COUNT III
**(Breach of Contract Third-Party Beneficiary)**

90. Plaintiff restates and incorporates by reference all allegations made in the previous paragraphs of this Complaint as though fully set forth herein.

91. Owner and Insurers entered into a binding and valid contract by and through the Policy.

92. The Policy gave Plaintiff an enforceable right as an Additional Insured.

93. Plaintiff was also a third-party beneficiary of the Policy.

94. Insurers breached the contract.

95. As a direct result of Insurers' breach of contract, Plaintiff suffered and continues to suffer monetary damages exceeding $75,000 in an amount to be determined at trial.

## COUNT IV
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

96. Plaintiff restates and incorporates by reference all allegations made in the previous paragraphs of this Complaint as though fully set forth herein.

97. The Policy is a contract which is governed by Massachusetts law.

98. Under Massachusetts law, every contract includes an implied covenant of good faith and fair dealing.

99. Insurers' refusal to honor the terms of the Policy by, among other things, failing to conduct a reasonable investigation of the Claim; failing to respond to the Claim in a timely manner; and, ultimately, disclaiming coverage of the loss, demonstrate a complete lack of good faith and fair dealing by Insurers.

100. Insurers have, therefore, breached the implied covenant of good faith and fair dealing.

101. As a result of Insured's breach, Plaintiff has been harmed.

102. Plaintiff is entitled to damages exceeding $75,000 in an amount to be determined at trial.

## COUNT V
**(Violation of G.L. c. 176D and G.L. c. 93A, §§ 2, 11)**

103. Plaintiff restates and incorporates by reference all allegations made in the previous paragraphs of this Complaint as though fully set forth herein.

104. At all relevant times, Insurers were engaged in the conduct of trade or commerce.

105. Insurers' conduct, as described above, occurred substantially and primarily within Massachusetts.

106. Collectively, Insurers are a "person" offering an "insurance contract" as those terms are defined in G.L. c. 176D, § 1.

107. As such, pursuant G.L. c. 176D, § 2, Insurers are prohibited from engaging in any trade practice which is determined to be an unfair or deceptive act or practice in the business of insurance.

108. Pursuant to G.L. c. 176D, § 3(9), unfair claim settlement practices constitute an unfair or deceptive act or practice.

109. Here, Insurers' unfair claim settlement practices include, without limitation: failing to conduct a reasonable investigation, failing to respond to the Claim in a timely manner, failing to conduct a fair investigation, failing to fairly adjust and/or pay the Claim where liability is reasonably clear, offering bad faith reasons for denial of coverage, and, ultimately, failing to fully cover the loss to bring Plaintiff back to the same or similar position prior to the loss.

110. As outlined above, further unfair claim settlement practices undertaken by Insurers in violation of G.L. c. 176D, § 3(9) in response to the Claim include, but are not limited to:

- Failing to act with candor and fairness;

- Failing to timely disclaim coverage for Plaintiff's claim or reserve their rights;

- Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Policy;

- Refusing to pay claims without conducting a reasonable investigation based upon all available information;

- Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

- Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

- Failing to provide promptly a reasonable explanation of the basis in the Policy in relation to the facts or applicable law for denial of a claim;

- Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

- Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; and

- Otherwise treating Plaintiff unfairly and without regard to its obligations of good faith and fair dealing.

111. At all relevant times, Insurers were engaged in trade or commerce in the Commonwealth of Massachusetts.

112. Here, as outlined above, Plaintiff's rights are affected by Insurers' violation of the provisions of G.L. c. 176D, § 3(9).

113. Insurers' violations of the provisions of G.L. c. 176D, § 3(9) evidence unfair or deceptive acts or practices in violation of G.L. c. 93A, § 11.

114. In addition to Insurers' violations of G.L. c. 176D, § 3(9), Insurers' conduct, as described above, including, without limitation, ignoring the Claim for a period of six months; denying coverage on a basis for which Insurers previously provided Plaintiff coverage; and

denying coverage without a good faith basis, constitutes unfair and deceptive acts and practices within the meaning of G.L. c. 93A, §§ 2, 11.

115. As a direct and proximate result of Insurers' unfair and deceptive acts and practices in violation of G.L. c. 176D and G.L. c. 93A, Plaintiff has been and will continue to be harmed.

116. As a result of these violations of G.L. c. 176D and G.L. c. 93A, Plaintiff is entitled to damages exceeding $75,000 in an amount to be determined at trial, as well as treble damages and its attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

A. Enter Judgment and declare that the Claim is covered under the Policy, and that Insurers were and are obligated to reimburse Plaintiff for the losses, expenses, and damages sought by the Claim (Count I);

B. Enter Judgment and award damages in favor of Plaintiff on Counts II through V of this Complaint;

C. Double or treble any such Judgment in favor of Plaintiff under Count V of this Complaint;

D. Award Plaintiff interest, costs and attorney's fees as allowed by law; and

E. Order such other relief as may be just and appropriate.

## **JURY CLAIM**

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS SO TRIABLE.**

                                      Respectfully submitted,

                                      **PLAINTIFF**

                                      **J. C. CANNISTRARO, LLC**

                                      By its attorneys,

                                      */s/ Bradley L. Croft*
                                      Bradley L. Croft (BBO #633347)
                                      Kirk J. McCormick (BBO # 568539)
                                      Adam G. Gutbezahl (BBO #693275)
                                      **RUBERTO, ISRAEL & WEINER, P.C.**
                                      255 State Street, 7th Floor
                                      Boston, Massachusetts 02109
                                      (617) 742-4200
                                      blc@riw.com
                                      kjm@riw.com
Dated:  July 19, 2024                  agg@riw.com